# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| HEIDI S., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Deputy Commissioner of Operations, performing duties and functions not reserved to the Commissioner of Social Security, <br><br> Defendant. | Case No. SA CV 17-01292-DFM <br><br> MEMORANDUM OPINION AND ORDER |

Heidi S. ("Plaintiff") appeals the Commissioner's final decision denying her application for Social Security Disability Insurance Benefits ("DIB").[1] For the reasons discussed below, the Commissioner's decision is reversed and this matter is remanded for further proceedings.

## I. BACKGROUND

Plaintiff filed an application for DIB alleging disability beginning on March 3, 2014. See Administrative Record ("AR") 152-53. After her

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

application was denied, she received a hearing before an administrative law judge ("ALJ"). See AR 119-30. The hearing took place on November 12, 2015. See AR 34-72. The ALJ heard testimony from a vocational expert and Plaintiff, who was represented by counsel. See id.

On May 12, 2016, the ALJ denied Plaintiff's claim. See AR 18-33. The ALJ found that Plaintiff had severe impairments of cervical spondylosis, lumbar spondylosis, scoliosis, osteoarthritis of distal interphalangeal joints, osteoarthritis of left knee, partial tear of the left supraspinatus tendon, and Raynaud's syndrome.[2] See AR 23-25. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> perform less than a full range of light work as defined in 20 CFR 404.1567(b)[, specifically,] lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk 6 hours in an 8 hour day; occasionally stoop, crouch, reach overhead with bilateral upper extremities; no concentrated exposure to extreme cold, extreme heat, wetness, humidity, vibration, or pulmonary irritants such as fumes, odors, dust, and gases.

AR 25. The ALJ found that Plaintiff could perform her past relevant work as an administrative clerk and thus was not disabled. See AR 28.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-7. Plaintiff then sought review in this Court. See Dkt. 1.

## II. DISCUSSION

Plaintiff argues that the ALJ improperly (1) discounted the opinion of two treating doctors, (2) discounted Plaintiff's symptom testimony, (3) failed to

---

[2] Raynaud's syndrome causes some areas of the body to feel numb and cool in certain circumstances.

include a hand limitation in the RFC, and (4) crafted an RFC that was not based on any doctor who had physically examined Plaintiff or a medical expert's testimony. See Dkt 21, Joint Stipulation ("JS") at 3. Because the Court finds that the ALJ erred in discounting the opinions of Plaintiff's treating physicians and her symptom testimony, the Court does not reach the remaining issues and will not decide whether those issues would independently warrant relief.[3]

**A.    Treating Physicians**

  **1.    Law**

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. § 404.1527(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a nonexamining physician's. See Lester, 81 F.3d at 830.

When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). Where such an opinion is contradicted, the ALJ may reject it for "specific and legitimate reasons that are supported by substantial evidence in the record." Id. (citations omitted). Moreover, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); see

---

[3] Upon remand, the ALJ may wish to consider Plaintiff's other claims of error.

also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other factors. See 20 C.F.R. § 404.1527(c).

### 2. Treating Physicians and ALJ Reasoning

Dr. Swati Medhekar, a rheumatologist, met with Plaintiff about four times between July 2014 and January 2015, when he filled out an RFC form. See AR 1363-68. He diagnosed Plaintiff with bilateral hand osteoarthritis, fibromyalgia, and Raynaud's. See AR 1363. He opined that she could rarely (0-30%) reach above her shoulders, reach down to waist level, reach down toward the floor, carefully handle objects, or handle with fingers. See AR 1365. He opined that she could lift less than 5 pounds. See id. He concluded that Plaintiff could not stand or sit for six to eight hours due to her back pain and fibromyalgia, but wrote "not applicable" next to these limitations for her osteoarthritis. AR 1364.

Dr. Wanda Chang completed a medical source statement in January 2015, at which point she had met with Plaintiff four times. See AR 1311-16. As her clinical findings, she noted May 2014 x-rays that showed degenerative cervical spine changes and severe degenerative changes in the thoracic lumbar area, as well as an August 2014 lumbar MRI that showed severe spinal narrowing, degenerative disc disease, and scoliosis. See AR 1311. She diagnosed Plaintiff with cervical and lumbar spondylosis and myofascial pain syndrome. See id. Dr. Chang assessed the following limitations: Plaintiff could not stand or sit upright for six to eight hours, and could only do so for thirty minutes at a time. See AR 1312. Plaintiff could reach above her shoulders or down to waist level or toward the floor only rarely (0-30%) but could carefully

4

handle objects and handle with fingers frequently (30-70%). See AR 1313. Plaintiff could carry only less than five pounds. See id.

The ALJ gave little weight to both doctors' opinions. See AR 27-28. The ALJ reasoned that, "[a]lthough some functional limitations are warranted based on the entire medical evidence, physical examinations from [Plaintiff's] office visits [with Drs. Medhekar and Chang] do not support such restrictive limitations." AR 27. The ALJ further noted that neither opinion was clear about how long Plaintiff could sit, stand, or walk in an 8-hour workday. See id. Finally, the ALJ explained that the doctors' opinions "are not consistent with the actual level of [Plaintiff's] daily activities of living," noting that she reported that she showered every other day, had breakfast, applied makeup, took a walk, got her mail, went to the market, unloaded light groceries, folded laundry, paid bills, and used the computer for emails and checking her bank account balances. AR 27-28.

### 3. Analysis

The parties dispute whether the Court should apply the "clear and convincing" or "specific and legitimate" test to the ALJ's reasoning for giving little weight to the opinions of Plaintiff's treating physicians. See JS at 19. Because the ALJ's reasoning is inadequate under either standard, the Court need not resolve this dispute.

The ALJ's conclusion that Plaintiff's physical examinations from her visits with Drs. Medhekar and Chang do not support the limitations opined by her treating physicians is insufficient. As the Ninth Circuit stated more than 30 years ago, an "ALJ must do more than offer [her] conclusions." Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988). The ALJ "must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." Id. at 421-22. Merely recounting the results from Plaintiff's physical examinations and then stating that those results do not support the doctors' limitations is

"inadequate"; the ALJ must relate those objective findings to the specific medical opinions being discounted. Id. at 422.

Nor do the limited daily activities reported by Plaintiff support the ALJ's treatment of her physicians' opinions. While it is true that "[e]ngaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination," Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014), the fact that Plaintiff could engage in the limited activities she described such as taking a walk and getting mail does not constitute an adequately specific conflict with her reported limitations. Indeed, "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits," and "many home activities are not easily transferable to what may be the most grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

The only remaining reason offered by the ALJ—that Drs. Medhekar and Chang were not clear about how long Plaintiff could stand in an 8-hour workday—is not itself a sufficient reason to give their entire opinions "little weight," especially where both opined about lifting and reaching limitations that were not reflected in the ALJ's RFC. Accordingly, reversal is warranted on this issue.

**B. Subjective Symptom Testimony**

**1. Law**

To determine whether a plaintiff's testimony about subjective symptoms is credible, an ALJ must engage in a specific two-step analysis. See Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). First, the ALJ must determine whether the plaintiff has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged pain or

other symptoms. See Lingenfelter, 504 F.3d at 1036. If the plaintiff meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting the plaintiff's complaints. See Robbins v. Soc. Sec. Admin, 466 F.3d 880, 883 (9th Cir. 2006). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the [plaintiff's] complaints." Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as amended) (citation omitted).

### 2. Testimony and ALJ Reasoning

Plaintiff testified that she could not work because of lower back, neck, and hand pain. See AR 40. In 2014, Plaintiff concluded that she could not work because she could not sit and work. See AR 46. Since then, her back pain had worsened and she would lie down on her stomach for 90 minutes in the morning and 90 minutes in the evening. See AR 47-48. The pain went away with heat, but the pain would return after 20 minutes when she was vertical. See AR 48. She became exhausted after walking for 20 minutes. See AR 48-49. Her husband carried her purse, and if he was not with her, she would empty her purse out almost entirely so that she could carry it. See AR 50. While steroid trigger point injections helped with her pain in June 2014, at the time of the hearing they worked only for two weeks instead of three months, and she could not get them any more frequently than three months apart. See AR 57. She could stand or sit for no more than 30 minutes and could lift no more than two pounds. See AR 70.

Plaintiff also completed a function report in August 2014.[4] At that time, she could shower, watch television, put on makeup, take a short walk, get the mail, go to the market if her husband pushed the cart, help unload light

---

[4] The form says 2013, but it seems apparent that it was August 2014.

groceries, help fold laundry, pay bills, and check bank balances online. See AR 163. She stated that she could not button a blouse and could no longer shower every day. See AR 164. She could not blow dry her hair because the hairdryer was too heavy. See id. She prepared her own simple meals with her husband's help. See AR 165. She could not clean except to wipe down a flat surface. See id. She could drive and shopped online once or twice a week for ten minutes at a time, and shopped for groceries once a week for 25 minutes. See AR 166. She visited friends twice a week. See AR 167.

The ALJ identified several reasons for discounting Plaintiff's testimony. First, the ALJ noted that despite Plaintiff's onset date of March 3, 2014, the only medical evidence from that period shows a doctor's visit due to a cold and other non-disabling conditions. See AR 28. Second, the ALJ noted that Plaintiff managed to complete an 8-page questionnaire to support her disability application by hand notwithstanding her testimony about her limitations. See id. Third, the ALJ found that Plaintiff's reported daily activities were inconsistent with her alleged symptoms, noting that her allegation that she had to lie down "a good part" of each day due to severe pain was contradicted by treatment notes reflecting that she exercised for 40 minutes per week at moderate to strenuous level. See id. Fourth, the ALJ noted that Plaintiff dropped out of pain management and declined a recommended knee replacement surgery. See id. Finally, the ALJ noted that the objective medical evidence did not support her allegations. See id.

### 3. Analysis

For the reasons discussed below, the Court finds that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's testimony.

As noted above, the limited activities of daily living described by Plaintiff do not form a basis for discounting her testimony. The "mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping,

driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001). The activities described by Plaintiff are not inconsistent with her alleged symptoms. See Saunders v. Astrue, 433 F. App'x 531, 533 (9th Cir. 2011) (concluding that substantial evidence did not support ALJ's determination to discredit claimant's pain testimony based on daily activities because "[w]e have held consistently that, activities such as light household chores, cooking meals, and grocery shopping are activities that do not necessarily translate to the work environment").

Both a conservative treatment history and a failure to obtain recommended treatment can be legitimate reasons for an ALJ to discount a claimant's credibility. See Tommasetti v Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). But a conservative course of treatment is not a proper basis for rejecting a claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment. See Carmickle v. Comm'r, SSA, 533 F.3d 1155, 1162 (9th Cir. 2008). Here, the ALJ did not address Plaintiff's reasons for not seeking more aggressive treatment, as the record shows that Plaintiff suffered from medication side effects and was a high-risk patient for a recommended total knee replacement. Plaintiff testified that she could not take a lot of the medications that her rheumatologist prescribed because of her irritable bowel syndrome. See AR 51. Similarly, the record shows that Plaintiff was advised by different doctors to avoid back and knee surgery despite her pain because of the risk of bleeding. See AR 743, 1329. One doctor told her that she should avoid surgery until "she cannot bear the pain any longer" because of her "history of bleeding episodes and infections." AR 1329.

As to the other reasons offered by the ALJ for discounting Plaintiff's credibility, the fact that Plaintiff completed an 8-page handwritten report in 2014 does not undermine her symptom testimony. The record contains no

9

information about how long it took Plaintiff to complete this form. And while she claimed that writing was "difficult," she never claimed that she could not write. Likewise, the fact that Plaintiff's alleged onset date does not correspond to any specific treatment records about her disabling conditions does not undermine her testimony about those conditions. The fact that there is no objective evidence from the alleged onset date is a basis for discounting her testimony, but that reason—a lack of supporting objective evidence—cannot form the sole basis for discounting pain testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). Reversal is therefore warranted on this ground.

**C.    Remand Is Warranted**

The decision whether to remand for further proceedings is within this Court's discretion. See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See id. at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"); Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

A remand is appropriate, however, where there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003); see also Garrison, 759 F.3d at 1021 (explaining that courts have "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is,

in fact, disabled within the meaning of the Social Security Act."). Here, remand is appropriate for the ALJ to properly consider the treating physicians' opinion and Plaintiff's symptom testimony and conduct such other proceedings as are warranted.

### III. CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is REVERSED and the action is REMANDED for further proceedings.

IT IS SO ORDERED.

Date: March 7, 2019

DOUGLAS F. McCORMICK
United States Magistrate Judge